**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MOHAMED AL-'OWHALI,      )
        )
      Plaintiff,     )
        )
vs.        )     Civil No. 3:21-cv-1399-SMY
        )
FEDERAL BUREAU OF PRISONS,  )
BARB VON BLANCKENSEE, *in her* )
*official capacity as Regional Director, North* )
*Central Region*,    )
DANIEL SPROUL, *in his official capacity* )
*as Warden, USP Marion*,  )
ANDRE MATEVOUSIAN, *in his official* )
*Capacity, Assistant Director of the* )
*Correctional Programs Division*, and )
COLETE S. PETERS, *in her official* )
*capacity, Director Federal Bureau of* )
*Prisons*,    )
      Defendants.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants, in their official capacities, by and through their attorneys, Rachelle Aud Crowe, United States Attorney for the Southern District of Illinois, and Ray M. Syrcle, Assistant United States Attorney, state as follows for their Motion to Dismiss for Failure to State a Claim.

## INTRODUCTION

Plaintiff Mohamed Al-'Owhali is currently serving a life sentence in the Federal Bureau of Prisons ("BOP") for his role in the 1998 bombing of the American Embassy in Nairobi, Kenya. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 101 – 105 (2d. Cir. 2008). Plaintiff's actions resulted in the deaths of over 200 people. *Id.* at 102. Plaintiff brings the present lawsuit seeking declaratory and injunctive relief, taking issue with his current institutional placement within the BOP. Plaintiff alleges his transfer from United States Penitentiary Marion ("USP Marion" or "Marion") to United States Penitentiary Florence ADMAX ("ADX") violates

1

his Fifth Amendment due process rights, his right against retaliation for his religious beliefs under the First Amendment, and his Eighth Amendment rights. Plaintiff's claims, however, fail as a matter of law for a number of alternative reasons.

First, this Court cannot grant the specific declaratory and injunctive relief Plaintiff requests. Alternatively, Plaintiff has failed to state claims for relief for constitutional violations under each alleged cause of action. The Amended Complaint fails to plead facts plausibly demonstrating he was denied due process in the transfer; that the transfer was in retaliation for his religious beliefs, and that the transfer will result in a substantial risk of harm to Plaintiff. The Court should therefore dismiss Plaintiff's claims.

## BACKGROUND

### I.   Plaintiff's Allegations

Plaintiff's general allegations are summarized as follows: Plaintiff is incarcerated at the ADX in Florence, Colorado. (Doc. 12, ¶ 1). Plaintiff was previously incarcerated at USP Marion, prior to being transferred to the ADX. (*Id*.). He alleges that, throughout his life, he has suffered symptoms of, and been diagnosed with various mental health disorders. (See e.g., id. at ¶ ¶ 45, 46, 58, 59). He alleges these alleged diagnoses render him someone with "Serious Mental Illness." (*See id*.).

Plaintiff raises numerous allegations regarding the conditions of confinement in the ADX and what he characterizes as "extreme isolation." (*See id.* at ¶ ¶ 16, 19 – 27). Nonetheless, Plaintiff's allegations state that he is provided housing, a bed, desk, stool, sink, toilet, ability to shower, three meals a day, medical treatment, and indoor or outdoor recreation. (*Id*. at ¶¶ 22, 25, 26). He alleges that the conditions at the ADX "spike" or "multipl[y] the risk of various physical or psychological harms posed by the alleged "extreme isolation." (*See id*. at ¶¶ 95 – 98). He

alleges these purported effects are "more pronounced" for people with pre-existing Serious Mental Illness, like himself.  (*Id.* at ¶ 100).  Plaintiff alleges that transfer to the ADX of someone with a "Serious Mental Illness" violates the Eighth Amendment, and therefore his transfer violates his Eighth Amendment rights.  (*Id.* at 103).

He raises several allegations relating to the transfer process itself.  (*Id.* at ¶¶ 61 – 89).  He alleges the transfer hearing administrator did not take Plaintiff's mental health into account when recommending he be transferred to the ADX.  (*Id.* at ¶ 79).  He alleges due process required consideration of his mental health, and that he be given additional information regarding the basis for his transfer.  (*See id.* at ¶¶ 87 – 88).  Finally based upon alleged "disparaging comments" about Muslims and Muslim prisoners by "various staff" and references to "Muslim inmates" and his "influential (leadership) role amongst the Muslim inmates" in disciplinary and transfer materials, Plaintiff alleges his transfer is based upon retaliation against his Muslim faith in violation of the First Amendment.  (*See id.* at ¶¶ 64, 75, 78, 90).  As relief for these alleged violations, Plaintiff seeks an injunction that BOP rescind his transfer and "return him to Marion," as well as, a declaratory injunction declaring his First, Fifth, and Eighth Amendment rights have been violated. (*Id.* at pgs. 17 – 18).

## II.   The ADX Transfer Procedure

On September 27, 2021 at 1:05 p.m., Plaintiff received notice that a hearing would be held the next day at 1:30 p.m. via teleconference for the purpose of determining whether he should be transferred to the ADX.[1]  (Exhibit A, Al-Owhali ADX transfer materials, BOP000006).  The notice informed Plaintiff that he was referred for ADX placement because his "conduct create[ed] a risk

---

[1] In the Amended Complaint, Plaintiff alleges he received notice of the transfer hearing on September 28, 2021 and that the hearing took place on September 29, 2021.  (Doc. 12, ¶¶ 76, 77).  Regardless, of the exact date, Plaintiff alleges, and the transfer materials demonstrate, Plaintiff's transfer hearing occurred the day after he received notice.

to institution security and good order, [and] pos[ed] a risk to the safety of staff, inmates or other, or to public safety." (*Id*.). Plaintiff was notified that the placement referral was due to his disruptive behavior at Marion. (*Id*.). The notice indicated that Plaintiff used his influential role among other inmates of the Muslim faith in his unit and "directed a number of them to engage in acts of violence against other inmates who do not share [his] views." (*Id*.). Plaintiff was informed that his disciplinary record supported this claim as he was accused of committing acts of violence against other inmates. (*Id*.). Per the notice, controlling Plaintiff's interactions with others was a necessity and Plaintiff presented security management concerns which could not be met in the general population of a regular institution. (*Id*. at BOP000006 – BOP000007). The notice also informed Plaintiff of the procedures afforded him as part of BOP's ADX transfer process, including the opportunity to be present at the transfer hearing, to make a statement at the hearing, and to be advised in writing of the Hearing Administrator's recommendation. (*Id*. at BOP000007).

The ADX transfer hearing was held at 1:45 p.m. on September 28, 2021. (*Id*. at BOP000003). Plaintiff received the written report of the hearing administrator the next day, September 29th. (*Id*. at BOP000005). Per the report, Plaintiff was present at the hearing and made a statement in his defense against transfer. (*Id*. at BOP000003). He did not present any documentary evidence. (*Id*.). The hearing administrator determined that Plaintiff should be placed in the ADX. (*Id*. at BOP000004). In making this determination, the administrator relied on an Inmate Investigation Report demonstrating Plaintiff held an influential role among Muslim inmates and directed them to assault other inmates who did not share his views. (*Id*.). The administrator also relied on Plaintiff's disciplinary history, which showed that he had been guilty of committing three high severity level prohibited acts within the prior 60 months. (*Id*.).

On October 1, 2021, Plaintiff's ADX placement was approved by Andre Matevousian, the Assistant Director, Correctional Programs Division. (*Id.* at BOP000001). The placement decision informed Plaintiff that he could appeal his ADX placement through the Administrative Remedy Program by submitting a form BP-10 to Grand Prairie Complex in Grand Prairie, Texas, and could further appeal with a BP-11 to the BOP Office of General Counsel. (*Id.*).

## LEGAL STANDARD

Defendants' motion is based on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants seek dismissal of Plaintiff's injunctive claim for relief under 12(b)(6) and his claim for declaratory relief under 12(b)(1). Alternatively, Defendants seek dismissal under 12(b)(6) as to each of the three counts for failure to state a claim for relief for each alleged constitutional violation.

To state a claim under the federal rules a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Per Rule 12(b)(6), a complaint must be dismissed when it "fail[es] to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). When ruling on a motion to dismiss under 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 – 56 (2007). The federal pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotations omitted). A complaint must demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

In addition, as courts of limited subject matter jurisdiction, federal courts "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). A defendant may seek dismissal of any claim over which a federal court lacks subject-matter jurisdiction. FED.R.CIV.P. 12(b)(1). A federal court cannot consider the merits of a claim unless first determining that it has subject matter jurisdiction to do so. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981). The burden of proof on a Rule 12(b)(1) issue is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED.R.CIV.P. 12(h)(3).

## ARGUMENT

**I.   As a matter of law, Plaintiff cannot obtain the injunctive and declaratory relief he seeks.**

> *a.   The injunctive relief sought by Plaintiff runs afoul of the PLRA.*

The PLRA places limits on the scope of injunctive relief courts can afford inmates. The act provides, in relevant part, that injunctive relief

> shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the Federal right.

18 U.S.C. § 3626(a)(1)(A). Further, courts should avoid involvement "in the day-to-day management of prisons," and afford "appropriate deference and flexibility to [federal] officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). In

addition, Courts afford prison officials "'wide-ranging deference'…regarding housing." *Girtler v. Fedie*, 835 Fed.Appx. 124, 126 (7th Cir. 2020).

The Seventh Circuit has repeatedly struck down injunctions in the prison setting that go beyond the Constitution's minimum requirements. For instance, in *Westefer v. Neal*, Illinois state prisoners challenged the procedures by which they were sent to the former state "supermax," the Tamms Correctional Center. 682 F.3d 679, 681 (7th Cir. 2012). There, the court struck down the district court injunction imposing a specific transfer process for inmates transferred to Tamms. *Id.* at 682 – 83, 686. The court found the injunction was overbroad in violation of 18 U.S.C. § 3626(a)(1)(A) in that it required Illinois prison authorities to provide more procedural protections than what the Constitution required. *Id.* at 683 – 84, 686. For instance, the district court's injunction required prison officials to provide 48-hour notice of the reasons for an inmate's transfer to Tamms ahead of the transfer hearing, where the Supreme Court had held that only 24-hour notice was required in such circumstances. *Id.* at 684. In reaching its decision, the Seventh Circuit stressed against "conflat[ing] what is constitutionally *adequate* to satisfy due process with what is constitutionally *required*." *Id.* at 683 – 84 (emphasis in original).

In addition, in *Rasho v. Jeffreys*, the Seventh Circuit, again relying on § 3626(a)(1)(A), struck down an injunction setting standards for mental health treatment in Illinois prisons. 22 F.4th 703, 706 (7th Cir. 2022). Among the requirements in the injunction was that the Illinois Department of Corrections was to maintain a specific number of certain types of personnel. *Id.* at 712. The district court had not established, however, that the specific personnel numbers were the minimum required to remedy the constitutional violations at issue. *Id.* at 713. By exceeding the PLRA's constraint on injunctive relief, the injunction removed from prison officials "the flexibility

necessary to adopt and implement policies that balance prison resources, safety concerns, and inmate health." *Id.*

Regardless of whether, as a factual matter, Plaintiff Al-Owhali's transfer to the ADX has violated his rights, Plaintiff cannot obtain the specific injunctive relief he requests, as a matter of law.  As prospective relief, Plaintiff requests the Court provide "injunctive relief requiring the Defendants to rescind Mr. Al-Owhali's transfer decision and return him to Marion." (Doc. 12, pg. 18).  When it comes to the question of inmate housing, however, a prisoner has no right to be housed in any particular facility.  *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).  *See also Shelby v. Gelios*, 287 Fed.Appx. 526, 528 (7th Cir. 2008) (noting "inmates do not have a liberty interest in being housed at a particular facility").  Even if Plaintiff's rights had been violated, an order requiring BOP transfer Plaintiff back to USP Marion would violate the commands of § 3626(a)(1)(A) and the Seventh Circuit requiring that injunctive relief be narrowly drawn.  The BOP maintains close to 100 prisons in its system. (*See* Exhibit C, List of BOP Prisons)[2]  Assuming Plaintiff could prove his rights had been violated in his transfer to the ADX, an injunction requiring that he be sent specifically to one facility, USP Marion, would go beyond "'what is constitutionally *required*'" in remedying the alleged violations, "and in doing so [would] overstep[] the bounds of the PLRA." *Rasho*, 22 F.4th at 713 (emphasis in original) (quoting *Westefer*, 682 F.3d at 683 – 84).  Further, an order requiring that Plaintiff be sent only to USP Marion would contravene the "'wide-ranging deference'"

---

[2] A court may take judicial notice, under Federal Rule of Evidence 201, of matters in the public record, including on government websites.  *See Laborers' Pension Fund v. Blackmore Sewer Const*., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information on an FDIC website); *Dennis v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information on the website for the National Personnel Records Center).  Exhibit C is a screenshot from the website of the Federal Bureau of Prisons, and accordingly the Court may take judicial notice of the information contained in it.

afforded prison officials regarding where an inmate is to be housed. *Girtler*, 835 Fed.Appx. at 126.

Plaintiff is "'the master of the complaint,'" and chooses what to plead and what relief to seek. *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc*., 535 U.S. 826, 831 (2002). Accordingly, a plaintiff "may plead [himself] out of court." *Massey v. Merrill Lynch & Co., Inc*., 464 F.3d 642, 650 (7th Cir. 2006). Plaintiff has done so here. Under 18 U.S.C. § 3626(a)(1)(A), Plaintiff cannot obtain the injunctive relief he requests—that BOP specifically "return him to Marion." (Doc. 12, pg. 18). Therefore, regardless of what the facts may show as to the alleged violations of Plaintiff's rights in his transfer, he has failed to state a claim upon which relief can be granted in his request for an injunction.

> b. *Because Plaintiff cannot obtain the requested injunction, the Court lacks jurisdiction over his request for declaratory judgment.*

Federal courts' authority to issue declaratory judgments is found in the Declaratory Judgments Act, 28 U.S.C. § 2201. *See Walker Process Equipment, Inc. v. FMC Corp*., 356 F.2d 449, 451 (7th Cir. 1966) ("The Declaratory Judgment Act created no new rights, but rather created a remedy with which to adjudicate existing rights."). The act, however, "provides no independent source of federal subject-matter jurisdiction." *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018). *See also Lawline v. American Bar Assoc*., 956 F.2d 1378, 1387 (7th Cir. 1992) ("The declaratory judgment act does not give subject matter jurisdiction."). Rather, the act merely "provides an additional remedy where jurisdiction already exists." *Balanyi v. Local 1031, Intern. Broth. of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967).

A federal court lacks jurisdiction over a claim for declaratory relief where there exists a "jurisdictional impediment that would bar a coercive action." Wright & Miller, 10B FED. PRAC. & PROC. CIV. § 2766 (4th Ed., Apr. 2022 update). In *Anheuser-Busch Inc. v. FTC*, the plaintiff

sought injunctive and declaratory relief relating to the issuance of a subpoena by the defendant Federal Trade Commission.  242 F.Supp. 122, 123 – 24 (E.D. Mo. 1965).  There, because the injunctive relief was subject to dismissal and the court was unable to enjoin the defendant, it was left without jurisdiction over the claim for declaratory relief.  *Id.* at 124, 127.  In addition, in *Amoakowaa v. Reno*, the plaintiff filed suit in federal court challenging the denial of his application for adjustment of his immigration status, including by requesting declaratory relief.  94 F.Supp.2d 903, 904 (N.D. Ill. 2000).  There, the court held that it was unable to grant the coercive relief requested by Plaintiff, in part, because federal statute expressly divested the court of jurisdiction to review the application denial.  *Id.* at 905.  The court held that because there was "no jurisdictional base for this claim," the court did not have jurisdiction over the request for declaratory relief.  *See id.* at 906.

This Court is also left without jurisdiction over Plaintiff's request for a declaratory judgment.  Plaintiff does not request money damages, but rather seeks declaratory relief and an injunction.  (*See* Doc. 12, pg. 17 – 18).  As discussed, however, the PLRA prohibits this Court from granting the injunctive relief requested by Plaintiff.    Since Plaintiff is left without any coercive remedy against Defendants, it lacks jurisdiction over Plaintiff's request for a declaratory judgment.  *See Anheuser-Busch*, 242 F.Supp. at 127 ("[S]ince this Court cannot enjoin the defendant, it cannot grant relief under the Declaratory Judgments Act.").  Therefore, Plaintiff's Complaint should be dismissed in its entirety—for failure to state a claim and for lack of jurisdiction.

## II.   Alternatively, Plaintiff was afforded due process in his transfer and his due process claim fails as a matter of law.

The Fifth Amendment provides, in relevant part, that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  To prevail on his claim

for alleged violations of the Fifth Amendment Due Process Clause, Plaintiff must demonstrate both (1) his transfer to the ADX implicates a liberty interest; and (2) the process afforded to him as part of the transfer was constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Regardless of whether his transfer to the ADX implicates a liberty interest, Plaintiff's allegations fail to adequately plead that the transfer process afforded him was constitutionally insufficient.

"Inmates transferred to a supermax prison are entitled to informal, nonadversarial due process." *Westerfer*, 682 F.3d at 684. *Westerfer* is the guiding decision in this circuit on what constitutional process is due when an inmate is transferred to conditions implicating a liberty interest. There, the Seventh Circuit applied the Supreme Court's holdings in *Wilkinson v. Austin*, 545 U.S. 209 (2005), *Hewitt v. Helms*, 459 U.S. 460 (1983), and *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), and laid-out the due process standard prisons must follow in such a transfer. *See Westerfer*, 682 F.3d at 681. The informal, nonadversarial due process requires "'some notice'" to the inmate of the reasons for the transfer and sufficient time for the inmate to "'prepare adequately'" for the administrative review of his transfer. *Id.* at 684. 24 hours-notice of a transfer review is sufficient. *See id*. The administrative review of the transfer does not need to occur prior to the transfer itself, but, rather, "need only take place within a 'reasonable time' of the inmate's transfer." *Id.*

Regarding the administrative review itself, a full hearing is not necessary, and due process only requires that the inmate be given an opportunity to present his views. *Id.* at 685. If a hearing is held, "inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses." *Id.* Prisons are also not required to issue a written decision laying out the reasons for the inmate's transfer or provide an appeal procedure. *Id.*

11

The allegations in the Amended Complaint and the ADX administrative hearing materials demonstrate the procedures Plaintiff was afforded met due process requirements.[3] First, Plaintiff was given 24-hour notice of the transfer hearing and the notice informed Plaintiff that he had been referred for ADX transfer due to his disruptive behavior posing a risk to the safety of staff and inmates at Marion.  Second, Plaintiff was given a transfer hearing that occurred before his transfer took place.  As required, Plaintiff was given an opportunity to be heard at the hearing, and he made a statement.  Further, the hearing officer's recommendation of a transfer to the ADX was reviewed and approved by the Assistant Director for the Correctional Programs Division days later and before Plaintiff was transferred.  These facts alone demonstrate the process afforded Plaintiff met the requirements of the Fifth Amendment as laid-out in *Westerfer*.  Moreover, BOP provided further process going beyond what the Constitution required.  For instance, Plaintiff was provided with a written statement of the hearing's findings and reason for his transfer, as well as, notice of an appeals process.  *Westerfer* explicitly states that the Constitution requires neither.  682 F.3d at 686.

The Amended Complaint attempts to require BOP to go beyond the constitutional minimum and afford certain procedural protections not necessary for adequate due process. Plaintiff alleges BOP was required to provide Plaintiff with "more information about what was prohibited about his leadership role in the Muslim community."  (Doc. 12, ¶ 87).  Due process, however, only requires "'some notice'" to the inmate of the reasons for the transfer.  *Westerfer*, 682 F.3d at 684.  Here, the written notice of the transfer hearing met due process standards in

---

[3] This Court can consider the ADX administrative hearing materials for purposes of Defendants' motion to dismiss under Rule 12(b).  "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim."  *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994)).  Here, the ADX administrative hearing materials are central to Plaintiff's due process claim as they are demonstrative of the process at-issue Plaintiff was afforded, and they are referenced in the Amended Complaint as Plaintiff refers to the hearing notice and quotes from the hearing report.  (Doc. 12, ¶¶ 76, 78).

notifying Plaintiff that his transfer referral was based on his behavior and the risk it posed to the institution.  *See Hewitt*, 459 U.S. at 464, 476 – 77 (inmate's discipline met due process requirements where inmate was given a notice charging him with an infraction and describing a factual basis for the charge).  Moreover, BOP went beyond the "some notice" requirement and did in fact inform Plaintiff as to what was relevant about his leadership role in the inmate Muslim community.  The notice given to Plaintiff informed him that he had used his influential role to direct inmates "to engage in acts of violence against other inmates who do not share [his] views." (Ex. A, Transfer Materials, BOP000006).

In addition, contrary to due process standards, Plaintiff alleges BOP was required to conduct a "review and consideration of his psychiatric conditions including his Serious Mental Illnesses." (Doc. 12, ¶ 88.).  Plaintiff also raises allegations regarding various BOP policies and alleges that any referral to the ADX "must include a detailed mental health evaluation done by a doctor-level psychologist." (*Id*. at ¶ 37).  Plaintiff, however, has brought claims alleging violations his rights under the Constitution of the United States, and the question before the Court is what process is due under the *Constitution*, not BOP policies.  *See Douglas v. Finnan*, 342 Fed.Appx. 198, 199 (7th Cir. 2009) (inmate's contention that prison disciplinary board violated its own procedural rules did not give rise to a federal constitutional question).  Again, the applicable due process standard is set by *Westerfer*, and nowhere did the Seventh Circuit require a detailed mental health evaluation nor a consideration of any alleged psychiatric conditions.  *See* 682 F.3d at 684 – 686.  Plaintiff's position, that the alleged BOP policies establish due process, including a mental health review, goes beyond what the Fifth Amendment requires and does not represent the constitutional floor.  In fact, in *Westerfer*, the injunction struck down by the Seventh Circuit as

going beyond the constitutional minimum was based upon a proposed transfer plan devised by Illinois prison authorities.  *See id*. at 682.

As a matter of law, Plaintiff does not state a claim for violations of his due process rights in his transfer to the ADX.  The Amended Complaint and referenced transfer materials demonstrate he was afforded the process required by the Fifth Amendment.  Further, Plaintiff's allegations that due process requires consideration and evaluation of his mental health impermissibly "conflate[s] what is constitutionally *adequate* to satisfy due process with what is constitutionally r*equired*."  *Id.* at 683 – 84.  Due process does not require a consideration of Plaintiff's metal health in his transfer to he ADX.  Therefore, Plaintiff's due process allegations fail to state a claim upon which relief can be granted, and Count 1 should be dismissed.

## III.  The Amended Complaint, referencing disciplinary and transfer materials, fails to state a claim for First Amendment retaliation.

To state a claim alleging unlawful retaliation under the First Amendment, an inmate must adequately plead three elements.  First, the plaintiff must allege engagement in a protected First Amendment activity.  *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).  Next, he must plead an adverse action taken against him.  *Id.*  Finally, he must raise allegations demonstrating his protected conduct was a motivating factor of the adverse action.  *Id.*  In the present matter, Plaintiff's retaliation claim rests mainly on two general allegations: first, that Plaintiff overheard "various staff members" make disparaging comments about Islam and Muslim inmates; and second, that written disciplinary and ADX transfer materials made reference to "Muslim inmates" and Plaintiff's influential role among such inmates.  (*See* Doc. 12, ¶¶ 64, 75, 78, 90).  He alleges that "[a]nti-Muslim sentiments infuse and infect the BOP's transfer decision, as shown through the comments staff made and the records' reference to 'Muslim inmates.'"  (*Id.* at ¶ 90).  These

allegations, however, are not sufficient to plausibly state that Plaintiff's transfer to the ADX was motivated by his Islamic faith.

To state a retaliation claim, a plaintiff must adequately plead that the specific decision-makers taking the adverse action against him were motivated, or influenced by others who were motived, by the plaintiff's protected conduct. *See Brown v. Advocate South Suburban Hosp.,* 700 F.3d 1101, 1108 (7th Cir. 2012); *Redd v. Nolan*, 663 F.3d 287, 295 (7th Cir. 2011); *Metzger v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008).   While Plaintiff alleges that he heard "various staff" at Marion make disparaging comments about Islam and Muslim inmates, there are no allegations that such comments were made by any of the decision-makers involved in the ADX transfer, including Defendant Matevousian who ultimately approved the transfer.  Nor is there an allegation that Defendant Matevousian, or any other decision-maker, was influenced by the alleged unnamed "various staff" who made the alleged disparaging comments.  Plaintiff is left only with the vague and "naked assertion," *Iqbal*, 556 U.S. at 678, that anti-Muslim sentiments "infuse and infect" the transfer decision based on the alleged disparaging comments, (Doc. 12, ¶ 90).  The Amended Complaint fails to plausibly plead a connection between the alleged anti-Muslim comments and the final decision to transfer Plaintiff to the ADX.  *See Brown*, 700 F.3d at 1108 (in the employment context, plaintiffs could not demonstrate retaliatory motive in denial of workplace transfers where there was no suggestion the decision-makers were aware of plaintiffs' prior protected conduct nor that they had been improperly influenced by those who were aware of the protected conduct).

Further, viewed in context, the BOP documents quoted in the Amended Complaint fail to plausibly demonstrate the ADX transfer was motivated by religious animus.  *See Wright v. Associated Insurance Companies, Inc.,* 29 F.3d 1244, 1246 – 48 (7th Cir. 1994) (in dismissing

civil rights action, district court could consider contract attached to motion to dismiss where contract was referred to and quoted in the complaint and was central to the plaintiff's claim).  The Discipline Hearing Officer report for Incident Report 3471033, referred to by Plaintiff, only once uses the phrase "Muslim inmates."  (*See* Exhibit B, Sept. 26, 2021 DHO Report).  It is used as a descriptive term to describe the inmates who assaulted another inmate.  (*See id.* at BOP000010). The relevance of the inmates' faiths to Plaintiff's discipline and transfer is readily apparent when examining the ADX transfer materials.  Plaintiff quotes from a portion of the transfer hearing administrator's report wherein the administrator notes Plaintiff's influential role among other Muslim inmates. Plaintiff relies on the quoted portion to allege it is demonstrative of anti-Muslim animus.  (Doc. 12, ¶¶ 78, 90). Reading the entire paragraph, however, demonstrates otherwise. The quoted paragraph, read in full, states:

> The ADX-GP referral packet reflects you engaged in disruptive behavior at USP Marion: Specifically, an Inmate Investigation completed on 02/01/2021, revealed you held an influential (leadership) role amongst the Muslim Inmates in your assigned unit, *and directed a number of them to assault other Inmates who do not share your views*.  This allegation is supported by your discipline record as shown in IRNO. 3471033 and IRNO 3464412.

(Ex. B, DHO Report, at BOP000004) (emphasis added).  What is left out of the Amended Complaint is that the transfer administrator noted Plaintiff's influential role among other Muslim inmates due to the fact Plaintiff had been found to have used this role to direct other Muslim inmates to assault inmates who do not share their views.  If Plaintiff chooses to refer to, and quote from, BOP records to support his allegations of unconstitutional retaliation in his transfer, then the records should be viewed and considered in-full—not merely in select quotations picked by Plaintiff.  *See Brownmark*, 682 F.3d at 690 (stating that, in deciding a motion to dismiss, consideration of documents referenced in and central to a complaint can prevent "a plaintiff from

'evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.'").

Rather than support Plaintiff's allegation that his transfer was premised upon "Anti-Muslim sentiments," the DHO report and transfer materials demonstrate his allegation is implausible.  The fact that the quoted documents reference Plaintiff's faith is not alone sufficient to "'state a claim…[for retaliation] that is plausible on its face.'"  *Pettis v. Fitness Intern., LLC,* 508 Fed.Appx. 565, 566 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  The mere fact that an adverse action against an inmate restricts or touches upon the inmate's faith does not itself demonstrate a violation of the First Amendment, particularly where the act in question is in furtherance of legitimate security concerns.  *See e.g., Larry v. Goldsmith*, 799 Fed.Appx. 413 (7th Cir. 2020) (prison could permissibly ban off-bunk prayer at night where ban was in furtherance of valid security concerns); *Young v. Lane*, 922 F.2d 370, 372, 375 – 76 (7th Cir. 1991) (plaintiffs' First Amendment rights were not violated where prison had security interest in prohibiting inmates from wearing yarmulkes).  The BOP documents quoted in the Amended Complaint support the position that Plaintiff was transferred because he and his influential role among Muslim inmates posed a threat to institutional safety at Marion.  They provide no support for the allegation that he was transferred in retaliation for his Muslim faith.

Without the aforementioned disparaging statements and quoted BOP documents providing support for Plaintiff's allegations, the Amended Complaint is left without "sufficient factual matter…to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).  Absent the supporting "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable" for retaliation against Plaintiff's Muslim

faith, the Amended Complaint lacks the "facial plausibility" necessary to state a claim for relief. *Id.* Count 2 for retaliation under the First Amendment should therefore be dismissed.

## IV. Plaintiff fails to state a claim under the Eighth Amendment as he fails to allege exposure to a substantial risk of serious harm.

While the Eighth Amendment bars the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, it "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). The Supreme Court has recognized that prison conditions can be "restrictive and even harsh." *Id.* at 347. The Eighth Amendment requires prison officials provide inmates only with "the minimal civilized measure of life's necessities." *Id*; *Farmer v Brennan*, 511 U.S. 525, 834 (1994). The Constitution requires prison officials to provide inmates with "adequate food, clothing, shelter, and medical care," and that they "must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotations omitted).

To state a claim for relief for a violation of the Eighth Amendment, an inmate must allege an objectively serious deprivation resulting in the denial of the minimal civilized measure of life's necessities and that prison officials were deliberately indifferent to the deprivation. *Id*. at 834. To plead deliberate indifference under the Eighth Amendment, the complaint must plead facts alleging prison officials knew of and disregarded an excessive risk to inmate health and safety. *Id*. at 837. Where an inmate seeks injunctive relief arising out of prison conditions, the inmate must adequately plead "a contemporary violation of a nature likely to continue." *Id*. at 845.

Where an Eighth Amendment claim is based on a failure to prevent harm caused by prison conditions, the inmate must sufficiently plead "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. To pose a substantial risk, the prison conditions "must be *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers." *Baze v. Rees,* 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality

18

opinion) (emphasis in original) (quotations omitted).  *See also*, *Wilson v. Ryker*, 451 Fed.Appx. 588, 589 (7th Cir. 2011).  A substantial risk of serious harm occurs when the "risk is 'so great' that it is 'almost certain to materialize if nothing is done.'"  *Wilson*, 451 Fed.Appx. at 589.

The Amended Complaint fails to plead facts demonstrating Plaintiff has been deprived the minimal civilized measure of life's necessities in the ADX.  Plaintiff's allegations state that he is provided housing, with a cell containing a bed, desk, stool, sink, toilet, and ability to shower.  (Doc. 12 ¶¶ 22, 25).  His allegations also state that he is provided meals three times a day, medical treatment, and indoor or outdoor recreation a few hours a week.  (*Id.* at ¶¶ 25, 26).

While Plaintiff's Eighth Amendment claim is premised upon a risk of psychological harm, he fails to plead facts demonstrating he himself is at imminent risk of any such harm.  Plaintiff makes various allegations regarding past alleged mental health symptoms and diagnoses.  (*See e.g.*, Doc. 12, ¶¶ 45, 46, 58, 59).  While Plaintiff alleges that these past alleged symptoms and diagnoses render him a person with a "Serious Mental Illness," he does not allege he currently suffers from and is currently affected by any of the referenced ailments.  (*See id.*).

More importantly, the Amended Complaint does not allege Plaintiff faces a substantial risk of serious harm by his transfer.  Plaintiff raises various allegations regarding an alleged "spike[d]" or "multiplie[d]" risk of various physical or psychological harms posed by what Plaintiff terms as "extreme isolation."  (*See id.* at ¶¶ 95 – 98).  He alleges these purported effects are "more pronounced for people with pre-existing Serious Mental Illness, like Mr. Al-Owhali."  (*Id.* at ¶ 100).  While Plaintiff makes generalized allegations regarding a mere increased risk of harm posed to "people" with "Serious Mental Illness" as a whole, he fails to allege facts demonstrating *he* is currently suffering from, or facing "a *substantial* risk" of suffering from, serious harm.  *Farmer*, 511 U.S. at 834. (emphasis added).  His allegations fall short of demonstrating an imminent risk

of harm almost certain to materialize by his incarceration in the ADX and therefore fail to state a claim for an Eighth Amendment violation in his transfer.  *See Wilson*, 451 Fed.Appx. at 590 (where inmate's complaint failed to "identify any tangible or imminent risk of harm" complaint was too "general and uncertain" to state a claim for failure-to-protect under the Eighth Amendment); *Brzowski v. Illinois Dept. of Corrections*, 2015 WL 1228916, *3 (S.D. Ill. Mar. 16, 2015) (Yandle, J.) (inmate failed to state Eighth Amendment claim relating to double-bunking where complaint raised allegations regarding mental harm to inmates generally without describing specific harmful consequences to plaintiff).  *See also, Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (inmate plaintiff could not raise constitutional claims where he alleged only that "prisoners" were transferred to segregation in retaliation for exercise of religion, speech, or association without alleging he himself had been transferred for such reasons).

In alleging that a group of people may face an increased risk of harm, without pleading facts demonstrating he himself faces a substantial risk of harm by being housed in the ADX, Plaintiff raises only a "mere possibility" of a constitutional violation, but he "has not 'shown'— 'that…[he] is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting FED.R.CIV.P. 8(a)(2)).  Count 3 should therefore be dismissed for failure to state a claim.

## CONCLUSION

Plaintiff's Amended Complaint should be dismissed.  His request for injunctive relief, if granted, would violate the PLRA, and with the injunctive relief dismissed, the Court is left without jurisdiction over his claim for a declaratory judgment.  Alternatively, each count fails to state a claim for relief for a constitutional violation under Rule 12(b)(6).  For these reasons, the Court should grant Defendants' motion to dismiss under Rule 12 and dismiss Plaintiff's Amended Complaint.

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney
Southern District of Illinois

*/s/ Ray M. Syrcle*
RAY M. SYRCLE
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700
(618) 622-3810 (fax)
Email: Ray.Syrcle@usdoj.gov
*Attorneys for Defendants*