IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTHERN ILLINOIS

| | |
|---|---|
| MOHAMED AL-'OWHALI, <br> Plaintiff, <br> v. <br> FEDERAL BUREAU OF PRISONS, *ET AL.*, <br> Defendants. | Case Number 21-cv-01399-SMY |

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## FOR FAILURE TO STATE A CLAIM

The Plaintiff, Mr. al-'Owhali, by and through his attorneys Deborah M. Golden and Alan Mills, states as follows for his opposition to the Defendants' Motion to Dismiss For Failure To State A Claim [ECF 23].

### INTRODUCTION

Mr. al-'Owhali has several Serious Mental Illnesses ("SMIs"), a term of art to describe a range of significant mental maladies. He is serving a life sentence, and this action does not challenge his convictions. This action does challenge the constitutionality of his conditions of confinement—specifically his transfer to the federal supermax.

This action was filed when Mr. al-'Owhali was held at the United States Penitentiary Marion ("Marion"). Defendants collectively were involved in the decision to transfer him out of Marion to the United States Penitentiary Administrative Maximum Facility known as ADX.

1

Defendants have filed a motion to dismiss, which Mr. al-'Owhali now opposes.[1] Defendants' arguments about the availability of relief, the Eighth Amendment, and the Due Process requirements of the Fifth Amendment all fall short. Mr. al-'Owhali has adequately pled that, considering his SMIs, his transfer to the ADX violates the Eighth Amendment's bar on cruel and unusual punishment and that the process by which Defendants decided to transfer him does not meet the Fifth Amendment's Due Process demands.

## LEGAL STANDARDS

Defendants correctly recite the familiar standards laid out by the Supreme Court for motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A plaintiff does not have to prove his case at the outset. Rather, a plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). A motion to dismiss "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). All a complaint must do is "*raise a reasonable expectation that discovery will reveal evidence.*" *Ctr. for Inquiry, Inc. v. Walmart, Inc.*, Nos. 20-CV-392, 20-CV-530, 2022 D.C. App. LEXIS 328, at *23 (Sep. 29, 2022) (citing *Twombly*, at 545) (emphasis added by Court of Appeals).

---

[1] After carefully considering the Defendants' motion, the Plaintiff concedes that Defendants are correct as to his second cause of action: religious discrimination in violation of the First Amendment. Plaintiff's counsel has notified Defendants' counsel of this concession and his willingness to file a Second Amended Complaint. Defendants' counsel consents to an amendment of the complaint. However, to avoid resetting the clock, Defendants' counsel has signified willingness to accept this concession in the briefing.

## ARGUMENT

### I. Injunctive and declaratory relief are available to Mr. al-'Owhali.

Defendants begin with an attempt to put the cart before the horse by focusing on the Prison Litigation Reform Act's requirements for injunctive relief.[2] The Federal Rules of Civil Procedure were not amended by the Prison Litigation Reform Act ("PLRA"). *Jones v. Bock*, 549 U.S. 199, 216-17 (2007). Pleading requirements can only be promulgated through the usual process for amending the Federal Rules of Civil Procedure. *Id.* . Courts have no power to impose stricter pleading requirements on prisoner cases than on other matters. *Id.* . As one Court of Appeals put it, the PLRA's restrictions on prospective relief are not "triggered" until the court is fashioning prospective relief. *Williams v. Edwards*, 87. F.3d 126, 133 (5th Cir. 1996); *see also Johnson v. McCowan*, 549 F. Supp. 3d 469, 479 (W.D. Va. 2021) (the PLRA "provides no independent basis for dismissing Johnson's claims."). This conclusion is supported by both the text of the Federal Rules of Civil Procedure and of the PLRA itself.

First, the Federal Rules of Civil Procedure provide that "[e]very [non-default] final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). A court determines the proper relief at the end of the case, independently of the parties' demands. *See York v. Beard*, No. 1:14-cv-01234-LJO-SKO (PC), 2015 WL 3488217, at *3 n.1 (E.D. Cal. June 2, 2015) (initial screening decision noting that, under the PLRA, a plaintiff may have a right to less relief than his complaint demanded, but is not confined to the relief sought), *R. & R. adopted*, 2015 WL

---

[2] The declaratory relief question is also a cart to come later, once the Court determines whether there is a horse to pull it. Mr. al-'Owhali agrees with the Defendants that the availability of declaratory relief rises and falls with the availability of injunctive relief. *See* Defs.' Mot. to Dismiss for Failure to State a Claim 9-10 [ECF 23].

4557437 (E.D. Cal. July 27, 2015). Thus, remedial issues cannot be addressed at the pleading stage by dismissal. *See G.H. v. Marstiller*, 424 F. Supp. 3d 1109, 1115 (N.D. Fla. 2019) ("At this stage, this Court has found no violation of Plaintiffs' rights and is not granting any prospective relief.").

Similarly, the PLRA's language implies that a plaintiff may ask for more than he may ultimately be entitled to: "*The court* shall not grant or approve any prospective relief unless…" 18 U.S.C. § 3626(a)(1)(A) (emphasis added). The limitations on prospective relief imposed by the PLRA are "a limitation on judicial authority over prisons at the remedial stage, not a heightened pleading requirement imposed on the plaintiffs." *Griggs v. Holt*, No. CV 117-089, 2018 U.S. Dist. LEXIS 182592, at *28, 2018 WL 5283448, at *10 (S.D. Ga. Oct. 24, 2018) *sub. nom. Varner v. Shepard*, *aff'd,* 11 F.4th 1252 (11th Cir. 2021).

This relief-limiting section of the PLRA "addresses only the *type* of relief courts may use to redress constitutional violations, and says nothing about the nature of the proceedings underlying the remedy ordered by the court." *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1383 (N.D. Ga. 1997) (emphasis in original). At bottom, "[t]he PLRA did not abrogate the longstanding rule that, at the motion-to-dismiss stage, a complaint is judged by whether it presents 'enough facts to state a claim to relief that is plausible on its face, not whether the relief requested will be granted in full.'" *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1312 (M.D. Ala. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Royer v. Fed. Bureau of Prisons*, 934 F. Supp. 2d 92, 96 (D.D.C. 2013) (refusing to consider BOP's

argument based on 18 U.S.C. § 3626(a)(1), as it was "premature" at the motion to dismiss stage).[3]

This order of operations is logically sensible, since the PLRA requires that if a court imposes injunctive relieve, it must make findings that the relief is narrowly tailored to correct the violation. How could a court make a rational determination of appropriate relief until there is a finding of a violation and a record that might illuminate how best it can be corrected? *See Thomas v. Hutcheson*, Civ. Action No.: 6:14-cv-16, 2015 U.S. Dist. LEXIS 92062, at *41-42 (S.D. Ga. July 15, 2015) (although the requested transfer to a lower security prison is unlikely to be the least intrusive remedy, "it would be imprudent to foreclose the Court from providing any injunctive remedy at all" if a violation is found), *R. & R. adopted*, 2015 U.S. Dist. LEXIS 113292 (S.D. Ga. Aug. 26, 2015); *Ashker v. Governor of Cal.*, No. C 09-

---

[3] This reasoning has been followed by courts around the country. *Haverkamp v. Penn*, Civ. Action No. 2:17-CV-18, 2020 U.S. Dist. LEXIS 175383, at *24 (S.D. Tex. July 16, 2020) ("Following discovery and further development of the issues in this case, the Court will be in better position to consider whether the injunctive relief sought by Plaintiff violates the PLRA.") *R. & R. adopted*, 2020 U.S. Dist. LEXIS 174513 (S.D. Tex. Sept. 23, 2020), *vacated as moot*, 6 F.4th 662 (5th Cir. 2021); *Johns v. Messer*, Civ. Action No. 7:19-cv-00207, 2020 U.S. Dist. LEXIS 8539, at *9 (W.D. Va. Jan. 17, 2020); *Archuleta v. Archuleta*, Civ. Action No. 15-cv-02664-RBJ-KMT, 2017 U.S. Dist. LEXIS 40399, at *27 (D. Colo. Feb. 27, 2017) ("concerns that such relief might not be narrowly drawn in compliance with this statute is not a basis to dismiss Plaintiff's request at this time."), *R. & R. adopted*, 2017 U.S. Dist. LEXIS 40398 (D. Colo., Mar. 21, 2017); *Fratus v. Mazyck*, No. 2:16-cv-0076-KJM-EFB P, 2017 U.S. Dist. LEXIS 17341, at *10 (E.D. Cal. Feb. 7, 2017) ("The merits of plaintiff's requested injunctive relief will be determined at a later stage in the litigation."), *R. & R. adopted*, 2017 U.S. Dist. LEXIS 34836 (E.D. Cal. Mar. 10, 2017); *Goode v. Bruno*, No. 3:10CV1734(SRU), 2013 U.S. Dist. LEXIS 140404, at *20-21 (D. Conn. Sept. 30, 2013) ("If Goode were to prevail in this action, the court would be constrained by the requirements set forth in 18 U.S.C. § 3626 in awarding injunctive relief against the defendant."); *Echezarreta v. Kemmeren, Case No: 10 C 50092*, 2013 U.S. Dist. LEXIS 114141, at *15 (N.D. Ill. Aug. 13, 2013) ("Should it become clear through the development of the record that certain defendants no longer work at Dixon, or that it would be impossible to narrowly draw injunctive relief for some reason, then defendants are welcome to raise this issue again at summary judgment.").

5796 CW, 2014 U.S. Dist. LEXIS 75347, at *28 (N.D. Cal. June 2, 2014) (the PLRA "governs the scope of injunctive relief that a federal court may issue in a 'prison conditions' case after liability has been assessed").

As an example, the need for a full factual record is in fact underscored by the Defendants' reference to their Exhibit C, the List of BOP Prisons.[4] The list provided includes all the prisons the BOP operates, including those for which there is no plausible scenario Mr. al-'Owhali will be assigned. Looking at the drop down menus will show that the list includes 13 federal women's prisons and 30 men's minimum and low security prisons. It includes non-general housing facilities, like the Medical Center for Federal Prisons Springfield and Federal Medical Center Lexington. *See* Federal Bureau of Prisons, Our Locations, https://www.bop.gov/locations/list.jsp#. What options exist for housing this particular individual, a man with SMIs who, as the Defendants' point out, Defs.' Br. 1, was convicted of a terrorism offense, can only be determined after full factual development. It may very well be that the only prison commensurate with Mr. al-'Owhali's security and mental health needs is Marion.

Lastly, even if this Court determines that it cannot give Mr. al-'Owhali all the relief he requested, that merely "supports crafting a pointed remedy if prospective relief is shown to be appropriate, not dismissing the case at the pleadings stage." *Hudson v. Preckwinkle*, No. 13 C 8752, 2015 U.S. Dist. LEXIS 41981, at *24 (N.D. Ill. Mar. 31, 2015).

In the end, if Mr. al-'Owhali's desires are more than the court will be order, he has also asked for "any other relief that the Court deems just and proper." FAC at 18. That

---

[4] The Plaintiff agrees with the Defendants, Defs' Br. 8, n. 2, that the Court may take judicial notice of what is contained on the BOP's website, and notes that it should include all the general information provided there, not just what is in a static printout.

catch-all is enough to meet the pleading requirements of Rule 8. *Johns v. Messer*, Civ. Action No. 7:19-cv-00207, 2020 U.S. Dist. LEXIS 8539, at *9 (W.D. Va. Jan. 17, 2020) ("While it may well be true that transfer would not be an appropriate remedy under this standard, Johns' complaint also seeks 'any additional relief deemed just by this court.'").

II. **Mr. al-'Owhali has sufficiently alleged an Eighth Amendment violation in that he is a person with SMIs transferred to extreme isolation at ADX.**

Mr. al-'Owhali has alleged enough for his Eighth Amendment claim to survive a motion to dismiss. To begin with, this Court should reject of the Defendants' argument that he has not plead a current-enough mental health diagnosis. Nothing in the Federal Rules or caselaw requires him to plead the lack of a *deus ex machina* cure to his Serious Mental Illnesses. The BOP's own providers have diagnosed him with conditions including depression, general anxiety disorder, bipolar disorder, and schizotypal personality disorder. First. Am. Compl. ¶ 46 [ECF 12]. His depression is so severe that he has been repeatedly placed on suicide watch. *Id*. ¶¶ 52, 59. He has been prescribed serious psychiatric medication including Buspar, Sertraline, and Amitriptyline to address some of these diagnoses. *Id.* ¶ 53. Defendants do not argue that those diagnoses were inaccurate.[5] The Court does not have to disregard common sense—these are not conditions that simply go away. *See, e.g.*, Mayo Clinic, Bipolar Disorder, https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 ("bipolar disorder is a lifelong condition"), Mayo Clinic, Schizotypal personality disorder, https://www.mayoclinic.org/diseases-conditions/schizotypal-personality-

---

[5] In order to review the BOP's most recent psychological evaluations of Mr. al-'Owhali , undersigned counsel requested Mr. al-'Owhali's entire updated medical, psychological and central prison file on December 7, 2021, through the Freedom of Information Act process proscribed by the BOP. Although the BOP acknowledged receipt of the request and assigned it identification number 2022-01360, it denied expedited processing and has yet to produce any records. *See* Exhibit A.

disorder/symptoms-causes/syc-20353919 ("Schizotypal personality disorder typically is diagnosed in early adulthood and is likely to endure across the lifespan."). By any measure, Mr. al-'Owhali has adequately pled that he is a person with a SMI.

Given that he is a person with a SMI, the Constitution places specific limits on his conditions of confinement. Generally, the Eighth Amendment proscribes the infliction of "Cruel and Unusual Punishment" and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted). It therefore forbids punishment that is "incompatible with the evolving standards of decency that mark the progress of a maturing society," or that involves "the unnecessary and wanton infliction of pain." *Id.* at 102-03 (internal quotations omitted). A prison official's deliberate indifference to prisoners' serious medical needs violates the Eighth Amendment. *Id.* at 104. Deliberate indifference involves both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834, 843-44 (1994). The objective component is met if a medical need is "sufficiently serious." *Id.* at 834, 843-44. An "unreasonable risk of serious damage" in the future can be an objective failure to meet the required "contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" *Clark v. Coupe*, No. 21-2310, 2022 U.S. App. LEXIS 32644, at *16 (3d Cir. Nov. 28, 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The subjective component of deliberate indifference is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, at 837. The Complaint sufficiently pleaded that the Defendants transfer of Mr. al-'Owhali to the ADX meets both these prongs and thus runs afoul of the Eighth Amendment.

As to the objective prong, the decisions have been uniform: Serious Mental Illness is an objective medical need, and placement of a person with a Serious Mental Illness in a highly restrictive setting, like the ADX supermax, creates an objectively serious risk of further harm.

First, it is beyond dispute that SMIs are a serious medical need. *See, e.g.,* J*ohnson v. Prentice,* 29 F.4th 895, 905 (7th Cir. 2022) (depression and bipolar disorder meet objective prong), *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1191-92 (9th Cir. 2002) (manic -phase), *Hall v. Ryan*, 957 F.2d 402, 406 (7th Cir. 1992) (recognizing that prisoners have a constitutional right "to be protected from self-destructive tendencies" including suicide). Just like with a serious physical medical need, prison officials must not be deliberately exacerbate an SMI.

Every court that has looked at the issue had concluded that placing prisoners with an objectively serious SMI in a supermax prison or other extreme segregation setting exposes those prisoners to an objectively unacceptable risk of the harm of exacerbation of their illnesses or creating more. *See Clark*, 2022 U.S. App. LEXIS 32644, at *25 ("the right of a prisoner known to be seriously mentally ill to not be placed in solitary confinement for an extended period of time by prison officials who were aware of, but disregarded, the risk of lasting harm posed by such conditions" was sufficiently established in 2016 so as to defeat claims of qualified immunity); *Suarez v. Annucci*, No. 20 CV 7133 (VB), 2021 U.S. Dist. LEXIS 243463, at *26-27 (S.D.N.Y. Dec. 21, 2021) ("given plaintiff's allegations that his mental illness issues were well-documented and known by various defendants who took part in his placement and maintenance in segregated confinement, plaintiff has sufficiently pleaded his segregated confinement posed an unreasonable risk of serious danger to his health"); *Ind. Prot. & Advoc. Servs. Comm'n v. Comm'r, Dep't of Corr., No*. 1:08-cv-01317-TWP-MJD, 2012 U.S. Dist. LEXIS 182974, at *60-61 (S.D. Ind. Dec. 31, 2012) (Indiana Department of Correction's practice of putting seriously mentally ill inmates in solitary

9

confinement threatens permanent injury and violates the Eighth Amendment; *Disability Advocs., Inc. v. New York State Off. of Mental Health*, No. 02 Civ. 4002 (GEL) (S.D.N.Y. Apr. 25, 2007) (settlement reached that all seriously mentally ill inmates housed in isolation were entitled to, among other things, two hours per day of out-of-the cell programming given allegations that solitary confinement led to increased self-mutilation); *Washington-El v. Beard*, No. 08-1688, 2011 U.S. Dist. LEXIS 24562, at *13 (W.D. Pa. Mar. 11, 2011) (concluding that plaintiff had adequately pleaded substantial risk of serious harm "[i]n light of plaintiff's allegations of a well-documented history of mental illness, [and] an exacerbation of symptoms during a lengthy administrative confinement"); *Scarver v. Litscher*, 371 F. Supp. 2d 986, 1003 (W.D. Wis. 2005) ("subjecting a person with plaintiff's severe mental illness and history of self-injury to conditions so lacking in physical and social points of reference" would lead to "a kind of psychological torture and future acts of self-harm") *aff'd*, 434 F.3d 972 (7th Cir. 2006); *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1116-25 (W.D. Wis. 2001) (granting injunctive relief because conditions of solitary confinement can be devastating to mentally ill prisoners housed in supermax prison); *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 915 (S.D. Tex. 1999) (it is unconstitutional to hold mentally ill prisoners in administrative segregation), *rev'd on other grounds sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001); *Coleman v. Wilson*, 912 F. Supp. 1282, 1320-21 (E.D. Cal. 1995) (holding that prison's policies and practices regarding segregating inmates with serious mental disorders violates the class members' Eighth Amendment rights); *Madrid v. Gomez*, 889 F. Supp. 1146, 1265 (N.D. Cal. 1995) (placing mentally ill inmates in the Pelican Bay isolation unit was unconstitutional, "the mental equivalent of putting an asthmatic in a place with little air to breathe"); *Casey v. Lewis*, 834 F. Supp. 1477, 1548, 1549-50 (D. Ariz. 1993) (holding that Arizona prison officials' practice of assigning seriously mentally ill inmates to segregated housing "[d]espite their

knowledge of the harm" constitutes an "appalling" Eighth Amendment violation); *Langley v. Coughlin*, 715 F. Supp. 522, 540 (S.D.N.Y. 1989) (prison officials' failure to "screen out" those who "by virtue of their mental condition, are likely to be severely and adversely affected by placement there" is unconstitutional); *Inmates of Occoquan v. Barry*, 717 F. Supp. 854, 868 (D.D.C. 1989) (can't hold in seg). *See also Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) ("The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators"); *cf. Wallace v. Baldwin*, 895 F.3d 482 (7th Cir. 2018) (the risk of self-harm to a mentally ill man "extreme isolation" is an "imminent danger of serious physical injury" under 28 U.S.C. § 1915(g).)

Having established that he has sufficiently alleged a violation of the objective prong of the Eighth Amendment analysis, Mr. al-'Owhali must show that he has sufficiently alleged a violation of the analysis's subjective prong.

To show a violation of that prong, a plaintiff need not allege direct evidence that an official knew of the substantial risk. An official's knowledge of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. When the substantial risk is "pervasive," and the "circumstances suggest that the defendant-official being sued had been exposed" to the substantial risk, the factfinder can properly infer that he "'must have known' about it." *Id.* at 842-43. This circumstantial evidence can come from a defendant's own policies. *Clark*, 2022 U.S. App. LEXIS 32644, at *32 ("By alleging their indifference to prison procedure, Clark inferred the officials knew but ignored the DOC's prohibition").

Mr. al-'Owhali has alleged that the BOP's own providers have diagnosed him with Suicidal Ideation, General Anxiety Disorder, Depression, Bipolar Disorder, and Schizotypal

Personality Disorder. Compl. Para. 9, 46- 60. He has alleged that while in the custody of the BOP he has repeatedly attempted suicide. Para 9. He has alleged that there is widespread understanding among prison officials of the dangers of solitary confinement, especially for people with SMIs. Para 17, 18. He has alleged that the BOP's own policies, of which it is reasonable to assume Defendants are aware, acknowledge as much. Para. 28, 29, 32-37, 73. He has alleged that ADX is supermax prison, designed and built by the BOP to impose extreme isolation. Para 19- 27. He has met the pleading requirements to survive a Motion to Dismiss on his Eighth Amendment claims.

None of the cases cited by Defendants are to the contrary. For example, the language quoted from *Baze v. Rees*, 553 U.S. 35, 50 (2008) ("must be sure or very likely to cause serious illness or needless suffering, and give risk to sufficiently imminent dangers") was quoting *Helling*, the case that held second-hand tobacco smoke posed an intolerable risk under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 34 (1993). The risks of a person with a serious mental illness suffering harm from supermax conditions is significantly greater than the harm that an individual will develop health problems from other inmates smoking on the same tier. *Baze* only holds that a condemned person cannot make an Eighth Amendment argument that presumes that executioners might make a mistake. *Baze*, 553 U.S. at 49. Mr. al-'Owhali makes no such argument. He has not been placed at ADX because of human error—he is there because of Defendant's deliberate acts.

It is true that failure to claim any risk of danger, as in *Brzowski v. Ill. Dep't of Corr.*, No. 15-cv-173-SMY, 2015 U.S. Dist. LEXIS 31948 (S.D. Ill. Mar. 16, 2015), or "generalized risk of violence," as in *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011), will not satisfy the Eighth Amendment's demands. But that does not mean that a plaintiff must plead that he is in certain danger. Requiring a substantial risk of future harm to a particular person would

subvert the holding *of Farmer v. Brennan*: "it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843. *See also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm") (cited in *Clark*, 2022 U.S. App. LEXIS 32644, at *16).[6]

None of Defendants arguments defeat Mr. al-'Owhali's claim of an Eighth Amendment violation.

### III. Given the liberty interest at stake, Mr. al-'Owhali has sufficiently alleged a Due Process violation.

Conditions that violate the Eighth Amendment are axiomatically atypical and significant prison conditions. It is an "inevitable conclusion" that a person has a liberty interest in avoiding a cruel and unusual prison condition. *See Gillis v. Litscher*, 468 F.3d 488, 495 (7th Cir. 2006); *see also See Jones v. Garman*, No. 1:21-CV-01715, 2022 U.S. Dist. LEXIS 84834, at *15 n.1 (M.D. Pa. May 10, 2022) ("[I]t would be anomalous to say that the conduct could plausibly constitute cruel and unusual punishment but did not rise to the level of an atypical and significant hardship on the plaintiff.").[7]

---

[6] *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) is not an Eighth Amendment case. The cited passage in any case only stands for the black-letter standing requirement that a person must be personally affected by a First Amendment retaliation claim or an equal protection claim in order to claim damages for such violations. *Id.* .

[7] Another way to look at this situation is to say that while extreme isolation is generally constitutional, it may be unconstitutional for a particular person because of his specific health or physical conditions. *See, e.g., Serrano v. Francis,* 345 F.3d 1071, 1079 (9th Cir. 2003) ("the conditions imposed on Serrano in the SHU, by virtue of his disability [reliance on a wheelchair], constituted an atypical and significant hardship on him"), *Delaney v. Selsky*, 899 F. Supp. 923, 927-28 (N.D.N.Y. 1995) ("a material question of fact remains as to whether, because of Mr. Delaney's height and the conditions of his cell, extending his SHU

13

And in fact, Defendants assume without explicitly conceding in their brief that Mr. al-'Owhali had a liberty interest in avoiding a transfer to Supermax. As they acknowledge, in this Circuit, all "[i]nmates transferred to a supermax prison are entitled to informal, nonadversarial due process." *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012). They focus their arguments on a claim that Mr. al-'Owhali received adequate process. PP 10-14.

But sidestepping the question of the nature of the atypicality and unusualness of sending a man with Serious Mental Illness to a supermax prison, obscures the question of what process is in fact due. At its core, the process provided must bear a relationship the particular liberty interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine whether the process provided was actually sufficient, a court must consider:

1) The liberty interest affected;
2) The risk of erroneous deprivation of that interest through the process given, and any value of additional or substitute procedural safeguards; and
3) The government's interest in avoiding the burdens of additional process.

*Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005).

First, here, while the bare-bones administrative hearing afforded to Mr. al-'Owhali may be enough to fulfill the procedural protections due to an average, mentally healthy person being considered for a transfer to ADX, it did not meet the procedural protections he was due for his particular liberty interest—not being housed in conditions which, because of his Serious Mental Illnesses, violate the Eighth Amendment.

Second, when the BOP failed to follow its own procedures outlined in Program Statement 5310.16, Treatment and Care of Inmates With Mental Illness,

---

confinement by 197 days imposed upon him an atypical and significant hardship.").

[https://www.bop.gov/policy/progstat/5310_16.pdf](https://www.bop.gov/policy/progstat/5310_16.pdf),[8] it missed the key process that would prevent the unconstitutional and therefore atypical and significant confinement —a detailed mental health evaluation done by a doctoral-level psychologist. Not checking for the very thing that defines the deprivation certainly creates a risk that one would miss that very thing; while checking for it is a good way to avoid missing it. Prison officials cannot play ostrich and call it Due Process.

And third, the BOP's burden is low. It would have only had to follow its own policies, taking on no more work than it has already agreed that it should be taking on.

Thus, the BOP did not meet its obligations under the Fifth Amendment to provide Mr. al-'Owhali with the required Due Process.

## CONCLUSION

Mr. al-'Owhali has Serious Mental Illnesses—bipolar disorder, depression, general anxiety disorder, and schizotypal personality disorder. The Defendants transferred him to the ADX in violation of the Eighth Amendment and did so without Due Process in violation of the Fifth Amendment. His requested remedies do not strip this Court of jurisdiction to hear his claims. As to the first and third causes of action, the Defendants' Motion to Dismiss should be denied.

---

[8] The BOP voluntarily adopted this specific policy as a result of the work undertaken in response to *Cunningham v. Federal Bureau of Prisons*, 1:12-cv-01570-RPM-MEH (D. Co.), a class action brought to remedy failures of the BOP to properly diagnose and treat prisoners at ADX with serious mental illness. *See* Pls.' Unopposed Mot. for Prelim. Approval of Settlement Terms and Proposed Notice to the Class [ECF 382], at 3, *available at* [https://clearinghouse.net/doc/86501/](https://clearinghouse.net/doc/86501/).

Dated: December 1, 2022

                Respectfully submitted,

                By: */s/ Deborah M. Golden*
                Deborah M. Golden
                The Law Office of Deborah M. Golden
                700 Pennsylvania Ave. SE, 2nd Floor
                Washington, DC 20002
                202-630-0332 (tel)
                202-217-3653 (fax)
                dgolden@debgoldenlaw.com

                Alan S. Mills
                Uptown People's Law Center
                4413 North Sheridan Road
                Chicago, IL 60640
                773-769-1411 (tel)
                773-769-2224 (fax)
                alan@uplcchicago.org