IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED AL-'OWHALI, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil No. 3:21-cv-1399-SMY |
| FEDERAL BUREAU OF PRISONS, *et al.,* | ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

Defendants, in their official capacities, by and through their attorneys, Rachelle Aud Crowe, United States Attorney for the Southern District of Illinois, and Ray M. Syrcle, Assistant United States Attorney, pursuant to Rule 56 of the Federal Rules of Civil Procedure, now move for summary judgment based on Plaintiff's failure to exhaust administrative remedies, and state as follows in support.

**INTRODUCTION**

Plaintiff Mohamed Al-'Owhali, currently serving a life sentence in the Federal Bureau of Prisons, brings the present lawsuit alleging violations of his constitutional rights based on his transfer from United States Penitentiary Marion ("USP Marion or "Marion") to United States Penitentiary Florence ADMAX ("ADX"). He alleges the transfer to the ADX violates his Fifth Amendment right to due process, his right against retaliation for his religious beliefs under the First Amendment, and his Eighth Amendment rights. Plaintiff, however, has failed to exhaust the administrative remedies available to him as required by the Prison Litigation Reform Act ("PLRA"). His claims should therefore be dismissed.

1

## BACKGROUND

**1. Plaintiff's allegations**

Plaintiff's general allegations are summarized as follows: Plaintiff is incarcerated at the ADX in Florence, Colorado. (Doc. 12, ¶ 1). Plaintiff was previously incarcerated at USP Marion, prior to being transferred to the ADX. (*Id*.). He alleges that, throughout his life, he has suffered symptoms of, and been diagnosed with, various mental health disorders. (*See e.g., id*. at ¶ ¶ 45, 46, 58, 59). He alleges these alleged diagnoses render him someone with "Serious Mental Illness." (*See id*.).

Plaintiff raises numerous allegations regarding the conditions of confinement in the ADX and what he characterizes as "extreme isolation." (*See id.* at ¶ ¶ 16, 19 – 27). He alleges that the conditions at the ADX "spike" or "multipl[y] the risk of various physical or psychological harms posed by the alleged "extreme isolation." (*See id*. at ¶¶ 95 – 98). He alleges these purported effects are "more pronounced" for people with pre-existing Serious Mental Illness, like himself. (*Id.* at ¶ 100). Plaintiff alleges that transfer to the ADX of someone with a "Serious Mental Illness" violates the Eighth Amendment, and therefore his transfer violates his Eighth Amendment rights. (*Id.* at 103).

He raises several allegations relating to the transfer process itself. (*Id.* at ¶¶ 61 – 89). He alleges the transfer hearing administrator did not take Plaintiff's mental health into account when recommending he be transferred to the ADX. (*Id.* at ¶ 79). He alleges due process required consideration of his mental health and that he be given additional information regarding the basis for his transfer. (*See id*. at ¶¶ 87 – 88). Finally based upon alleged "disparaging comments" about Muslims and Muslim prisoners by "various staff" and references to "Muslim inmates" and his "influential (leadership) role amongst the Muslim inmates" in disciplinary and transfer materials, Plaintiff alleges his transfer is based upon retaliation against his Muslim faith in violation of the

First Amendment. (*See id.* at ¶¶ 64, 75, 78, 90). He alleges anti-Muslim sentiments "infuse and infect" the transfer decision. (*Id.* at ¶ 90).

### 2. The BOP Administrative Remedy Program

As set forth in 28 C.F.R. §§ 542.10 – 542.19, generally, the BOP makes available to inmates a four-tiered administrative remedy process, beginning with informal resolution of inmate issues. (Exhibit A, Declaration of Melissa Wallace, ¶ 5). Once an inmate has attempted to informally resolve the issue, the formal administrative remedy process begins when an inmate files a Request for Administrative Remedy—also known as a BP-9—at the institution where the inmate is incarcerated. (*Id.*); 28 C.F.R. §§ 542.13, 542.14. The program requires an inmate to "place a single complaint or a reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2). While an inmate may obtain assistance from others in preparing a remedy request, "no person may submit a Request or Appeal on the inmate's behalf." 28 C.F.R. § 542.16(a).

In the standard process, if an inmate is not satisfied with the response at the institution level, the inmate may appeal by filing a Regional Administrative Remedy Appeal—BP-10—with the Regional Office within 20 calendar days of the date the Warden signs the institutional response. (Ex. A at ¶ 5); 28 C.F.R. § 542.15(a). Under the standard Administrative Remedy procedure, an appeal from a remedy sought at USP Marion must be appealed to the North Central Regional Office in Kansas City, Missouri. (Ex. A at ¶ 5). If the inmate is still dissatisfied with the response at the Regional level, he may appeal to the BOP's Office of General Counsel via a Central Office Administrative Remedy Appeal, also known as a BP-11. (Ex. A at ¶ 5); 28 C.F.R. § 542.15(a). The appeal to the Central Office is the final step of the BOP's administrative remedy process. (*See* Ex. A at ¶ 5).

When grieving placement in the ADX, the administrative remedy process deviates slightly from the standard format. In the context of an appeal of placement in the ADX, BOP policy requires the inmate to grieve his placement decision by directly appealing the decision to BOP's Grand Prairie Complex located at the U.S. Armed Forces Reserve Complex, 346 Marine Forces Drive, Grand Prairie, Texas via a BP-10. (*Id.* at ¶ 6; Attachment 3, BOP000101). The inmate can then appeal the BP-10 to the Central Office by submitting a BP-11 to the Office of General Counsel. (*Id.* at Attachment 3, BOP000101).

A remedy request or appeal may be rejected at any level. (Ex. A at ¶ 7); 28 C.F.R. § 542.17(a). "When a submission is rejected, the inmate shall be provided a written notice…explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal." (Ex. A at ¶ 7); 28 C.F.R. § 542.17(b).

An inmate has not exhausted his administrative remedies until he has properly and timely sought review at the appropriate levels of the Administrative Remedy process, as required by BOP. (Ex. A at ¶ 7). *See also* 28 C.F.R. § 542.15(b)(2).

3. **Plaintiff's administrative remedy submissions**

On September 28, 2021, a hearing was held regarding whether Plaintiff should be transferred from Marion to the ADX. (*See* Ex. A at ¶ 15, Attachment 3, BOP000103). After the hearing administrator found ADX placement was appropriate, his placement in the ADX was approved by Andre Matevousian, Assistant Director for the Correctional Programs Division, on October 1, 2021. (Ex. A at ¶ 15, Attachment 3, BOP000101, BOP000104). On October 4, 2021, Plaintiff received notice of the determination that he warranted placement in the ADX. (Ex. A at ¶ 15, Attachment 3, BOP000101). The ADX General Placement Decision form approving

Plaintiff's placement in the ADX specifically informed Plaintiff that he had "the right to appeal this decision within thirty days of receipt, through the Administrative Remedy Program, using a Regional Administrative Remedy Appeal (BP-10) form," and that his appeal should be sent to the "Grand Prairie Complex, U.S. Armed Forces Reserve Complex, 346 Marine Forces Drive, Grand Prairie, Texas 75051." (*Id.*). The form also informed him of his right to appeal the BP-10 to the Central Office. (*Id.* at Attachment 3, BOP000101). Plaintiff received, and acknowledged receipt of, this form on October 4, 2021. (*Id.* at ¶ 15, Attachment 3, BOP000101).

The BOP's electronic database, called SENTRY, is used to track all administrative remedy submissions. (*See* Ex. A at ¶¶ 9, 10). A search of Plaintiff's administrative remedy data in SENTRY revealed the following: After receiving notice of his ADX placement, on November 1, 2021, Plaintiff submitted an appeal regarding ADX placement to the BOP's South Central Regional Office ("SCR"). (*Id.* at ¶ 16, Attachment 2, BOP000094). The SCR is located at the U.S. Armed Forces Reserve Complex at an address different from the Grand Prairie Complex. (*See id.* at ¶ 16). While the Grand Prairie Complex is located at 346 Marine Forces Drive, Grand Prairie, Texas, the SCR is located at 344 Marine Forces Drive, Grand Prairie, Texas. (*See id.* at ¶¶ 6, 16). The Grand Prairie Complex and SCR are distinct facilities and perform separate functions within the BOP. (*Id.* at ¶ 16).[1] The SCR provides administrative oversight and support to the 21 federal prisons and community corrections offices in a five-state area including Arkansas, Louisiana, New Mexico, Oklahoma, and Texas. (*Id.*). By contrast, the Grand Prairie Complex includes the branch of the BOP Central Office that handles the agency's inmate designations, inmate transportation, and sentence computations. (*Id.*).

---

[1] *Compare also*, "Grand Prairie," FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/grand_prairie/, (last accessed, Nov. 28, 2022), *with*, "South Central Regional Office," FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/regional_offices/scro/, (last accessed, Nov. 28, 2022). Each website reflects the separate staff mailing address for the respective facilities. *See id.*

Plaintiff's submission was rejected at the SCR on November 9, 2021, advising Plaintiff that his appeal of ADX placement had been submitted to the wrong level, that he failed to attempt informal resolution, and that he must first file a BP-9. (*Id.* at ¶ 17, Attachment 2, BOP000094, Attachment 4, BOP000114, BOP000115). The SCR does not typically receive administrative remedy requests regarding ADX placement since such appeals are to be submitted to the BOP's Grand Prairie Complex, and ADX referrals themselves are not common. (*Id.* at ¶ 17).

On February 23, 2022, Plaintiff appealed the SCR rejection to the BOP Central Office on February 23, 2022. (*Id.* at ¶ 17, Attachment 2, BOP000099). This remedy was rejected by Central Office on March 7, 2022 for being filed at the wrong level, and Plaintiff was instructed to submit his BP-10 to DSCC, U.S Armed Forces Reserve Complex, 346 Marine Forces Drive, Grand Prairie, Texas 75051. (*Id*. at ¶ 17, Attachment 2, BOP000099, Attachment 4, BOP000114 – BOP000115). Plaintiff, however, has not refiled this remedy. (*Id*. at ¶ 17).

In addition, prior to his ADX referral, Plaintiff submitted a remedy request regarding placement in a Special Management Unit ("SMU"). (*Id.* at ¶ 18). The remedy was received on July 15, 2021. (*Id*. at ¶ 18, Attachment 2, BOP000092). In this remedy, Plaintiff claimed that his SMU placement was punishment for religious beliefs and affiliations. (*Id*. at ¶ 18, Attachment 2, BOP000092, Attachment 5, BOP000117). A SMU is a unit that is considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of BOP facilities, or the protection of the public, based on specific criteria. (*See id.* at ¶ 18). The remedy request was submitted months before Plaintiff's ADX hearing, and, while it alleges discrimination by specific members of BOP staff, the remedy makes no mention of the ADX hearing administrator or Mr. Matevousian. (*See id*. at Attachment 5, BOP000117). The Warden of Marion issued a response to the remedy on October 26, 2021. (*Id.* at ¶ 18, Attachment

6

5, BOP000116). Plaintiff appealed the remedy to the North Central Region on December 3, 2021. (*Id*. at ¶ 18, Attachment 2, BOP000096). Three days later, on December 6th, the appeal was rejected as untimely. (*Id*. at ¶ 18, Attachment 2, BOP000096, Attachment 4, BOP000115). Plaintiff did not appeal the remedy further. (*Id.* at ¶ 18). Finally, Plaintiff has not submitted any administrative remedies concerning the impact of his transfer to the ADX on his mental health. (*Id*. at ¶ 19).

## LEGAL STANDARD

A court must grant summary judgment if the moving party demonstrates it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). While, typically, a court's role in summary judgment is not to weigh evidence or judge witness credibility, a different standard applies when a court decides a motion based on an inmate's failure to exhaust. *Johnson v. Lashbrook*, 2017 WL 4340290, *2 (S.D. Il. September 29, 2017). In deciding a summary judgment motion based on an inmate's failure to exhaust administrative remedies, a judge, rather than a jury, determines contested issues regarding exhaustion and may make limited findings of fact. *See Pavey v Conley*, 544 F.3d 739, 741 – 42 (7th Cir. 2008) ("*Pavey I*").

## ARGUMENT

**I. Plaintiff has failed to exhaust available administrative remedies as required by the PLRA.**

Pursuant to the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under section 1983…or any other Federal law, by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A suit may proceed to the merits only after any contested issue of exhaustion has been resolved. *Pavey I*, 544 F.3d at 742.

The Seventh Circuit takes a strict compliance approach to exhaustion. *Johnson*, 2017 WL 4340290 at *3. The "boundaries of proper exhaustion" are defined by the respective prison's

requirements. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In this instance, since Plaintiff is incarcerated by the BOP, he is required to exhaust the BOP's Administrative Remedy Program, as described above. To exhaust, Plaintiff must therefore "file complaints and appeals in the place, and at the time, the [BOP's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A remedy is not considered exhausted if an inmate has failed to follow the proper procedures set forth by the institution. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) ("*Pavey II*"). The purpose of the exhaustion requirement is to afford prison officials the opportunity to address inmate complaints within the institution before a lawsuit is filed. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

In addition, exhaustion is a complete precondition to filing suit. An inmate must wait to bring suit once he has exhausted the remedies made available to him by the institution—even if the inmate anticipates impending exhaustion. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 534 – 35 (7th Cir. 1999). Where an inmate files suit before exhausting his administrative remedies, his suit must be dismissed, even if he completes exhaustion during the pendency of the suit. *See Perez*, 182 F.3d at 534 – 35.

> a. *Plaintiff failed to exhaust his administrative remedies relating to his ADX placement.*

Plaintiff has not properly exhausted an administrative remedy relating to ADX placement under any relevant standard. In the context of seeking administrative relief of a decision to place an inmate in the ADX, BOP requires the inmate to submit a BP-10 to BOP's Grand Prairie Complex, and then to appeal any adverse decision on the BP-10 to the Central Office. This process was explicitly presented to Plaintiff on the ADX General Population Placement Decision form, which Plaintiff acknowledged receipt of on October 4, 2021. Plaintiff did not follow the required process for seeking administrative relief from an ADX transfer, however, and did not submit a BP-

10 to the Grand Prairie Complex. He has therefore failed to exhaust his claims relating to his ADX placement.

Though at a similar address, Plaintiff's appeal to the SCR does not constitute proper exhaustion. BOP requires an inmate appeal an ADX placement decision to the Grand Prairie Complex, a location distinct from the SCR where Plaintiff sent his appeal. While the Grand Prairie Complex is located at 346 Marine Forces Drive in Grand Praire, Texas, the SCR is located at 344 Marine Forces Drive. (*See* Ex. A, Wallace Dec, at ¶¶ 6, 16). On two occasions, Plaintiff was specifically instructed to send his appeal to 346 Marine Forces Drive, and he did not do so. The SCR and Grand Prairie Complex are separate facilities with differing responsibilities within the BOP. The facility handling inmate transportation and inmate designation is the Grand Prairie Complex, where Plaintiff was required to send his appeal, not the SCR, where Plaintiff actually sent his appeal. Though they may have similar address, the facilities are distinct, and by sending his ADX placement appeal to the SCR, Plaintiff failed to submit his remedy "in the place…the [BOP's] administrative rules require." *Pozo*, 286 F.3d at 1025.

Even if the BOP's standard administrative remedy procedure was applicable in this circumstance, Plaintiff still has not exhausted under the normal procedure. Plaintiff has provided only one administrative remedy submission pertaining to his ADX placement—his November 1, 2021 appeal to the SCR. Under the standard administrative remedy procedure, Plaintiff's appeal would not be appropriate because an appeal from an issue at USP Marion must be sent to the North Central Regional Office in Kansas City, Missouri, not the South Central Regional Office. Therefore, under any metric for BOP administrative exhaustion, whether under the ADX placement procedures or the standard administrative remedy procedures, Plaintiff "failed to abide

9

by the procedures for pursuing relief." *Pavey II*, 663 F.3d at 903.  He has therefore failed to exhaust his administrative remedies and his claims should be dismissed.

        *b. Plaintiff cannot demonstrate other remedies exhaust any individual claims for relief.*

The July 15th remedy does not exhaust any of Plaintiff's claims, including his First Amendment claim.[2] First, the July 15th remedy grieves a SMU placement, and it was submitted months before Plaintiff's ADX hearing.  It also raises no allegations that the specific decision-makers involved in Plaintiff's ADX transfer were discriminating against him, and instead alleged discrimination by other individuals.  The July 15th remedy, therefore, does not place BOP staff on notice of a grievance relating to Plaintiff's transfer to the ADX, and it does not place staff on notice of an accusation that the ADX transfer was based on religious discrimination.  *See Ruiz v. Butalid,* 2022 WL 16833521, *2 (7th Cir. Nov. 9, 2022) ("The primary purpose of the exhaustion requirement is to put the prison on notice of the nature of a possible lawsuit and give it a chance to correct an alleged problem…"); *Givens v. Vaughn*, 2017 WL 2118286 *5 (S.D. Il. May 16, 2017) ("The purpose of a grievance [or in BOP's case, a "remedy"] is to place prison officials on notice of a shortcoming in order to allow them to address it.").

Moreover, the content of the July 15th remedy aside, Plaintiff did not complete the requisite exhaustion process.  Though he appealed the Warden of Marion's response to the regional level, his appeal was untimely.  The Warden's response was signed on October 26, 2021, and Plaintiff's deadline to submit an appeal was 20 days later, on November 15, 2021.  28 C.F.R. § 542.15(a).  Plaintiff, however, did not appeal the July 15th remedy until after the deadline, on December 3, 2021.  Regardless, the late nature of the appeal aside, by failing to further appeal from the regional

---

[2] Regardless, Defendants also understand Plaintiff to have conceded Defendants' Motion to Dismiss as to the cause of action alleging religious discrimination in violation of the First Amendment.  (*See* Doc. 24, pg. 2, n. 1).

10

level to the Central Office, Plaintiff still did not complete the final stage of exhaustion. Plaintiff cannot therefore demonstrate the July 15th remedy exhausts any of his claims, including his First Amendment claim for religious discrimination. Plaintiff has no other remedies he can demonstrate exhaust any of his claims.

## CONCLUSION

Plaintiff has failed to exhaust his administrative remedies as required by the BOP and PLRA. His remedy appeal relating to his ADX placement was not properly exhausted under any metric. In addition, his remedy relating to alleged religious discrimination does not place BOP staff on notice of discrimination relating to his ADX placement and was also not properly exhausted. There are no other remedies Plaintiff can demonstrate exhaust his claims in this matter.

This Court should therefore grant Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies and dismiss Plaintiff's claims.

Respectfully submitted,

RACHELLE AUD CROWE
United States Attorney
Southern District of Illinois

*/s/ Ray M. Syrcle*
RAY M. SYRCLE
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700
(618) 622-3810 (fax)
Email: Ray.Syrcle@usdoj.gov
*Attorneys for Defendants*