IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTHERN ILLINOIS

MOHAMED AL-'OWHALI,
    PLAINTIFF,
v.
FEDERAL BUREAU OF PRISONS, *ET AL.*,
    DEFENDANTS.

Case Number 21-cv-01399-SMY

**Opposition to Defendants' Motion to Transfer and Response to Defendants Motion for Reconsideration**

    The Plaintiff Mr. al-'Owhali, by and through his attorneys Deborah M. Golden and Alan Mills, now responds as follows to the Defendants' motions: a Motion for Reconsideration of the Court's Order Denying the Defendants' Motion to Dismiss [ECF 31] and a Motion to Transfer the Case to the District of Colorado [ECF 33].

    Mr. al-'Owhali takes no position on the Motion for Reconsideration.

    Mr. al-'Owhali Opposes the Motion to Transfer. This litigation could not have been brought in the District of Colorado. That court would have had neither personal jurisdiction over Defendant Sproul nor been a proper venue as a substantial part of the acts or omissions—the decisions to transfer Mr. al-'Owhali without consideration of his mental health disabilities—did not take place within Colorado. And in any event, transfer to the District of Colorado is now not more convenient for anyone or in the interests of justice.

**Legal Standard**

    In a motion to transfer venue, the movants—here the Defendants—bear the burden of establishing that the transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

1

## Argument

This brief will address the Defendants' motions in chronological order.

**I.    Mr. al-'Owhali Takes No Position Defendants' Motion to Reconsider the September 25, 2023 Memorandum and Order in Part.**

The Defendants request this Court revisit its decision not to dismiss Count 2 of Mr. al-'Owhali's Complaint. The proceedings are as the Defendants describe. Mr. al-'Owhali takes no position on this motion.

**II.   Venue Should Not Be Transferred Away from this Court.**

This Court is the proper and just venue for consideration of this lawsuit. Mr. al-'Owhali opposes the transfer of this litigation to the District of Colorado. First, this litigation could not have been brought in the District of Colorado. Second, even if it could have been brought there, the interests of justice would dictate that it should remain in this Court.

Decisions to transfer venue are in the discretion of the original court and require a two-step analysis: (1) Might the action have been brought in the proposed transferee court; and if so, (2) would the transfer be "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a); *see also Martinez v. Deutsche Bank AG*, No. 16-1207-DRH, 2017 U.S. Dist. LEXIS 56095, at *14 (S.D. Ill. Apr. 12, 2017). If the movant establishes that the action might have been brought in the suggested court, then the movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient" *Coffey*, 796 F.2d at 219-20.

### A.     The District of Colorado Would Not Have Been a Proper Forum

Defendants skate over this requirement, but Mr. al-'Owhali could not properly have filed this case in the District of Colorado. It is Mr. al-'Owhali's burden to show proper venue. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (abrogated in part by amendment of §1404), *Van Dusen v. Barrack*, 376 U.S. 612, 624, 84 S. Ct. 805, 813 (1964) (same).[1] Venue is, of course, governed by 28 U.S.C. §1391. Critically, venue is evaluated at the time of filing. *Stafford v. Briggs*, 444 U.S. 527, 536 (1980); *c.f. al-Marri v. Rumsfeld*, 360 F.3d 707 (7th Cir. 2004) (no venue in habeas corpus petition filed the day after the petitioner was moved from the jurisdiction).

On the day this matter was filed, there was no cognizable argument for venue in the District of Colorado. Venue in an action against federal official capacity defendants lies in a district where "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred…, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C.S. §1391(e)(1).

Subsection (A) provided no claim to venue in Colorado. No defendant resides in Colorado. The Federal Bureau of Prisons, as an agency of the United States, resides in Washington, D.C. *See Reuben H. Donnelley Corp. v. Fed. Trade Com.*, 580 F.2d 264, 267 (7th Cir. 1978). Federal officers "reside" where they perform their official duties.[2] *See id.* at 266

---

[1] 28 U.S.C. §1404(a) has been amended to allow transfer to a court "to which all parties have consented." This clarification is irrelevant in a case such as this, where the plaintiff does not consent to the transfer. *See, e.g.,* R*aisman v. U.S. Olympic Comm.,* No. 18-cv-02479-BLF, 2018 U.S. Dist. LEXIS 198132, at *15 (N.D. Cal. Nov. 20, 2018), *Schubert v. Osram Ag*, Civil Action No. 12-923-GMS, 2013 U.S. Dist. LEXIS 19705, at *7 (D. Del. Feb. 14, 2013).

[2] Because there have been personnel changes at the BOP, Federal Rule of Civil Procedure 25(d) specifies automatic substitution of defendants sued in their official capacities. An unopposed motion to substitute these names on the docket has been submitted. [ECF 36].

n.3. Andre Matevousian is stationed at the North Central Regional Office of the BOP, in Kansas City, Kansas. *See* Federal Bureau of Prisons, *North Central Regional Office*, https://www.bop.gov/locations/regional_offices/ncro/. Daniel Sproul is stationed at USP Marion, which is in Marion, Illinois. See Federal Bureau of Prisons, *USP Marion,* https://www.bop.gov/locations/institutions/mar/. Linda Geter and Colette Peters are stationed at the BOP Central Office in Washington, DC. *See* Federal Bureau of Prisons, *Central Office*, https://www.bop.gov/about/facilities/offices.jsp#central_office.

Subsection (C) is equally clear—it does not give rise to venue in Colorado. It looks to where the plaintiff resides. At the start of this litigation, Mr. al-'Owhali was housed at USP Marion, which of course is in this district. That he was later transferred to a prison in Colorado is irrelevant to the venue analysis.

Finally, careful examination of the events and omissions that Mr. al-'Owhali alleges gave rise to his claims, shows that subsection (B) could not have been used to establish venue in Colorado.

All of the events complained of happened in this district or in the BOP's regional offices in Kansas. No action that was the subject of the original complaint occurred within Colorado.

Thus, while the *conditions* at ADX are part of his due process and cruel and unusual claims, conditions are not events or omissions. The problematic *events and omissions*—the crux of the action—all took place at USP Marion or the BOP North Central Office in Kansas.

Mr. al-'Owhali was housed at USP Marion when he filed this suit. [Complaint, ECF 1]. He led Muslim prayer at the prison. [ECF 12, First Amended Complaint (FAC) 61-62]. At USP Marion, he received two disciplinary infractions for two different fights that occurred in that prison. [FAC 65-67]. Former Director of the North Central Region, Ms. von

4

Blanckensee, whose office was in Kansas, remanded the charges for procedural defects. [FAC 68-70]. Staff at USP Marion never told Mr. al-'Owhali what those defects were. *Id*. USP Marion staff tried to send Mr. al-'Owhali to a BOP Special Management Unit, although his mental health disabilities prevented him from going there. [FAC 71-73]. There were disciplinary rehearings at USP Marion. [FAC 74]. USP Marion staff served Mr. al-'Owhali with a notice that he would be transferred to ADX. [FAC 76]. There was a hearing at USP Marion, at which the decision was made to transfer him to ADX. [FAC 78]. The decision-makers at USP Marion omitted consideration on Mr. al-'Owhali's mental health disabilities. [FAC 70].

In sum, *every event* and *every omission* that gave rise to Mr. al-'Owhali's lawsuit occurred either in Illinois or in a BOP regional office in Kansas. Not one act or omission underlying the lawsuit occurred in Colorado. Had those acts and omissions not occurred, Mr. al-'Owhali would not have been transferred to the ADX in Colorado.

In fact, had this action—which on the day it was filed focused on Mr. al-'Owhali's planned transfer out of USP Marion—been filed in the District Court for the District of Colorado, that court should have transferred the case here, to the Southern District of Illinois, where all of the events at issue took place. "[T]he entire progression of the underlying claim" did not occur in Colorado and so proper venue did not lie there. *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (holding that the negligent work giving rise to an insurance claim is a substantial act and establishes a proper venue). One of the cases defendants rely on, *Boyd v. Snyder*, 44 F. Supp. 2d 966 (N.D. Ill. 1999), ordered a transfer of venue in exactly those circumstances. Those plaintiffs filed a case about mental health care provided to prisoners at Tamms supermax prison in the Northern District of Illinois. The Northern District transferred venue of the case to this district, precisely because the events at

5

issue (mental health treatment) all occurred at Tamms, in this district. *Id.* at 970-71. This is exactly the situation here: Mr. al-'Owhali, the only plaintiff, was located in this district and almost all the relevant acts and omissions occurred in this district, while none occurred in the proposed transferee district.

Thus, since the District of Colorado would not have been a district in which Mr. al-'Owhali's litigation "might have been brought," it is improper to consider transferring the litigation there. 28 U.S.C. 1404(a).

B. **Transferring this case to the District of Colorado is not appropriate.**

Even assuming that this case could have been brought in the District of Colorado, a §1404 transfer is not appropriate. The statute allows that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented" 28 U.S.C. §1404(a).

There is a split between the circuits as to whether the two elements in §1404 (convenience of the parties and interests of justice) are to be looked at separately or together. The contrast between the venue provisions of bankruptcy law and the Instant statute are instructive. The bankruptcy provision includes the word "or" between the two elements. The instant statute does not, and instead uses a simple comma. As several courts outside of this circuit have noted, that difference should be meaningful. *See, e.g.*, *LSREF2 Baron, LLC v. Aguilar*, Civil Action No. 3:12-cv-1242-M, 2013 U.S. Dist. LEXIS 8657, at *12 (N.D. Tex. Jan. 18, 2013) ("28 U.S.C. §1404(a) sets the bar to achieve a transfer a bit higher than 28 U.S.C. §1412."). *Gingras v. Rees*, No. 5:15-cv-101, 2005 U.S. Dist. LEXIS 64682, at *18 (D. Vt. Apr. 28, 2020) (noting §1404 is more onerous than §1412), *Tang v. Citic Cap. Holdings Ltd.,* Civil

Action No. 21-17008-JXN-AME, 2022 U.S. Dist. LEXIS 184505, at *15 (D.N.J. Oct. 7, 2022) ("Section 1404(a)'s requirement that a transfer serve both the interests of justice and convenience).

However, the Seventh Circuit has held that the convenience of the parties and the interests of justice are independent components and instructed, "the district judge must consider the statutory factors in light of all the circumstances of the case." *Coffey*, 796 F.2d at 219. While Mr. al-'Owhali preserves the argument for potential appeal that the Seventh Circuit was wrong in *Coffey*, this Court need not resolve that issue in deciding this motion, as defendants have failed to establish either element.

### 1. The convenience of the parties favors this Court.

A plaintiff's choice of venue is, axiomatically, an expression of what is convenient for him, her, or them. The Seventh Circuit stressed that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)). Here, Mr. al-'Owhali filed this suit in this forum, where he was located. The very acts and omissions that he maintains were unconstitutional resulted in his removal from the Southern District of Illinois. But for defendants' wrongful conduct, Mr. al-'Owhali would *still be* housed in this district. To allow defendants to unconstitutionally transfer Mr. al-'Owhali to a distant venue and then argue that his case must follow him to a place he never wanted to be would be to reward their bad conduct. It would allow the BOP to choose its own favored venue by simply transferring any prisoner out of their chosen venue. This district is where Mr. al-'Owhali wants his case adjudicated, and that must be given strong weight.

7

The convenience of other parties and witnesses is a toss-up. Even before the pandemic, modern communication made remote depositions and testimony possibly. Now, working by video has become second nature to us all. Furthermore, 42 U.S.C. §1997e(f) instructs that "[t]o the extent practicable," Mr. al-'Owhali's participation "shall be conducted by telephone, video conference, or other telecommunications technology."[3]

2.  **The interests of justice lie in remaining in this Court.**

Defendants largely rest their argument on an appeal to the interests of justice. They are incorrect. To assess the interests of justice, a court should look to factors such as docket congestion and likely speed to trial, each court's relative familiarity with the relevant law, the desirability of resolving questions in each locale, and the relationship of each community to the controversy. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010). While the dockets are slightly less crowded in the District of Colorado, they are not so significantly less crowded as to outweigh the rest of the factors.

Neither court has a greater familiarity with the relevant law. This is not a diversity case, where a federal court must also deal with the law of a sovereign state. This case's jurisdiction is based on federal questions. The District of Colorado and the Tenth Circuit are no more familiar with the Fifth or Eighth Amendments than is this Court. While because of geography, those courts have dealt with cases arising out of the ADX, this Court has similarly dealt extensively with USP Marion. And of course, both this Court and the Seventh Circuit

---

[3] It is not clear where Mr. al-'Owhali would be at the point his testimony is required. He is progressing through the ADX program and expects to be transferred out shortly. Due to issues with prison call scheduling, undersigned council will not be able to speak with Mr. al-'Owhali until November 18, 2023. If there are more updates as to his placement, he will file a motion requesting to update the Court.

have dealt extensively with the broader questions of due process and cruel and unusual punishment. *See Rasho v. Jeffreys*, 22 F.4th 703 (7th Cir. 2022) (reviewing injunction related to class of Illinois inmates with mental health disabilities), *Farmer v. Brennan*, 81 F.3d 1444 (7th Cir. 1996) (after remand in Farmer v. Brennan, 511 U.S. 825 (1994)), *Davis v. Baldwin*, No. 3:16-CV-600-MAB, 2021 U.S. Dist. LEXIS 110558 (S.D. Ill. June 14, 2021) (granting class certification for all prisoners at risk of extreme isolation in Illinois Department of Corrections), *Ross v. Gossett*, 3:15-cv-00309 (S.D. Ill.) (class action alleging Eighth Amendment violations by IDOC tactical teams), *Westefer v. Synder*, 3:00-cv-00162 (S.D. Ill.) (class action related to Tamms supermax prison, which ended with the closing of the prison),

As for the interests of the community, while Defendants nod toward the Due Process allegations (Defs' Mot. For Transfer of Venue, at 5), they fail to acknowledge that whether prisons in the Southern District of Illinois follow the dictates of the Constitution is at least as important to the Illinois community as whether prisons in Colorado follow the dictates of the Constitution is to Coloradans.

Finally, this Court has been dealing with this case for almost two years (over two years by the time the briefing is completed). The Court has issued three substantive opinions. [ECF 11, 13, 31]. Defendants moved for summary judgment here [ECF 25], which the Court has denied without prejudice, with indication that it may be renewed consistent with a scheduling order. The interests of justice do not favor having a new judge start over.

The cases cited by Defendants are not to the contrary. In *Weaver*, it was significant that the bulk of the records and witnesses were in the transferee district, most defendants resided there, and that as an FTCA case, it would require familiarity with the laws of the state in which the transferee district sat. *Weaver v. United States*, No. 3:16-CV-271-JPG-DGW, 2017 WL 9532844, at *4 (S.D. Ill. June 20, 2017), *report and recommendation adopted sub nom.*

9

*Weaver v. Harbinson*, No. 16-cv-00271-JPG-DGW, 2017 WL 3033783 (S.D. Ill. July 18, 2017). No such concerns are present here: most of the records (to the extent they are not electronic) and witnesses are at USP Marion, none of the Defendants reside in Colorado, and this is not an FTCA matter.

*Carillo v. Darden*, 992 F. Supp. 1024 (N.D. Ill. 1998) presents a different concern than what is raised here. In that case, the court stressed that all material events took place in the transferee district, and only one defendant's residence gave rise to venue in the transferor district. *Id.* at 1025. Mr. al-'Owhali's case is not one of venue hung upon nothing but one defendant's residence. The key parts of the story—the acts and omissions that led to the decision to transfer Mr. al-'Owhali—took place here.

Additionally, neither of Mr. al-'Owhali's lawyers are admitted to practice in Colorado, and thus a transfer would leave him without counsel. While the convenience of counsel does not weigh strongly in venue decisions, the fact that a plaintiff would be deprived of counsel if this case were transferred is relevant to whether the interests of justice would be served.

## CONCLUSION

Mr. al-'Owhali had alleged that decisions made while he was at USP Marion violated the constitution. It was at USP Marion that he was charged with disciplinary violations, that multiple hearings took place, and that no consideration was given to his mental health disabilities. It was here that BOP staff tried to send him to a Special Management Unit and it was here that BOP staff decided to send him to ADX. It is here that his case should be heard. He respectfully requests that this Court deny Defendants' Motion for Transfer of Venue.

Dated: November 2, 2023

Respectfully submitted,

By: */s/ Deborah M. Golden*
Deborah M. Golden
The Law Office of Deborah M. Golden
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20002
202-630-0332 (tel)
202-217-3653 (fax)
dgolden@debgoldenlaw.com

Alan S. Mills
Uptown People's Law Center
4413 North Sheridan Road
Chicago, IL 60640
773-769-1411 (tel)
773-769-2224 (fax)
alan@uplcchicago.org